[Civ. No. 46652. Second Dist., Div. Five. May 19, 1976.]

WESTERN CONTRACTING CORPORATION,
Cross-complainant and Appellant, v.
SOUTHWEST STEEL ROLLING MILLS, INC.,
Cross-defendant and Respondent.

534

**COUNSEL**

Oshman, Brownfield, Smith & Hobart and Gerald H. B. Kane for Cross-complainant and Appellant.

Jones & Wilson and William F. Flahavan for Cross-defendant and Respondent.

**OPINION**

**STEPHENS, J.**—This is an appeal from a judgment entered pursuant to an order granting a motion for summary judgment on a cross-complaint for express indemnity.

*Facts*

The facts are substantially as set forth in appellant's brief: Sometime prior to June 1, 1967, Western Contracting Corporation (Western), acting

as a general contractor, entered into a written contract with the Department of Water Resources of the State of California for the construction of a dam near Castaic. Thereafter, on June 5, 1967, Western entered into a written subcontract with Southwest Steel Rolling Mills, Inc. (Southwest Mills) under which the latter was to furnish and install reinforcing steel on the Castaic construction project.

On April 27, 1970, Norman Kropchuk, an employee of Southwest Mills, was fatally injured while working as a reinforced iron worker on the Castaic dam project. He suffered his fatal injuries when a section of heavy reinforced iron mat, held aloft by a crane, fell upon him and crushed him. Subsequently, Kropchuk's widow instituted a wrongful death action naming Western and others as defendants.

Thereafter, relying solely upon express indemnity provisions in its subcontract with Southwest Mills, Western cross-complained against Southwest Mills for all sums which Western might be compelled to pay to Mrs. Kropchuk, together with attorney fees and costs which Western might incur in defending against her wrongful death action.

Two provisions in the Western-Southwest Mills subcontract concern indemnity. The first (original) provision, included as Article 10 in the standard printed form, reads as follows: "Subcontractor hereby agrees to assume the entire responsibility and liability for and defense of and to pay and indemnify and hold Prime Contractor and/or Owner harmless from all claims for damages or injury (or death resulting therefrom) to any and all persons, including Subcontractor's employees, agents, and servants, and all claims for damages to property whether claimed as or resulting from or arising out of Prime Contractor's or the Owner's negligence (whether active or passive), act, omission or fault or by reason of any provisions of the Prime Contract, making Prime Contractor liable for damages or injuries to persons or property (which obligations Subcontractor assumes as to all work and/or the performance thereof, under this Subcontract) or by reason of any liability imposed upon Prime Contractor under any statute, ordinance or regulation, or deemed as or resulting from, or arising out of any negligence, act, omission, or fault on the part of Subcontractor in connection with this Subcontract, or resulting from or arising out of the prosecution of the work hereunder, or in connection therewith, and all damage, direct or indirect, of whatever nature resulting from the performance of the work hereunder or resulting to the work from whatever cause, including acts or omissions

and supervisory acts of Prime Contractor or Owner and that Subcontractor shall save Prime Contractor and Owner harmless from, and against any and all loss and/or expense or damage which Prime Contractor and Owner, or either, may suffer or pay as a result of claims or suits due to, because of, or arising out of, any and all such injuries, deaths, and/or damages and shall indemnify and save harmless Prime Contractor and Owner from any claims or suits by Subcontractor's employees against Prime Contractor or Owner, seeking recovery for personal injury and/or death, whether such claims or suits are based on negligence, passive or active, of the Prime Contractor, or of Owner, or otherwise. Subcontractor, if requested by Prime Contractor, shall assume and defend, at its own cost and expense, any suit, action or other legal proceeding arising therefrom. If Prime Contractor shall defend any suit, action or other legal proceeding, the cost and expense thereof shall be included within the meaning of the words 'cost and/or expense or damage' for which Subcontractor shall be liable as provided for hereunder."

The second provision, typed as an addendum to the printed subcontract, reads as follows: "Add the following statement to Article 10 of the Subcontract: The subcontractor shall not be liable for injury, loss or damage attributable to the acts, conduct, or neglect of the prime contractor, or any other unrelated subcontractor or the agents, servants, and employees of any of them."

On January 24, 1975, Southwest Mills moved for summary judgment in its favor on Western's cross-complaint. On that date, the main action was still pending, not having come to trial. The summary judgment motion was based upon the contention that it was factually impossible for any situation to arise in which Western could be liable to the plaintiff in the main action (Mrs. Kropchuk) and also have a right of indemnification as against Southwest Mills. Determining that there was no triable issue of fact, the lower court granted Southwest Mills' summary judgment motion. Western appeals from the judgment entered pursuant to that order.[1]

### Issues

Three issues are presented on this appeal: (1) whether the Southwest Mills motion for summary judgment was actually a motion for judgment

---

[1]Following the entry of summary judgment in this cross-action, a settlement was reached in the main action whereby Western agreed to pay Mrs. Kropchuk $200,000 in settlement of her wrongful death claim.

on the pleadings; (2) whether the subcontract's indemnity provisions were subject to only one interpretation; and (3) if the indemnity provisions were subject to only one interpretation, whether Western could be both liable to the plaintiff in the main action and entitled to indemnification from Southwest Mills.

## Discussion

■ As to the question of the nature of the motion made by Southwest Mills, appellant contends that this motion, which was denominated a "Motion for Summary Judgment," was "probably" in fact a motion for judgment on the pleadings. The determination of this preliminary issue does not affect the ultimate disposition of the case at bar; however, the contention necessitates determination.

A careful review of the documents submitted below demonstrates that the motion in question was in fact a motion for summary judgment. In forwarding its motion, Southwest Mills did not allege that Western's pleadings were insufficient on their face. Rather Southwest Mills contended that there was no valid basis for Western's indemnification claims. This contention was based upon Southwest Mills' construction of the indemnity provisions. Southwest Mills construed those provisions so as to enable Western to obtain indemnification from Southwest Mills only in the event that Western itself was liable solely because of vicarious liability imposed upon Western as a result of the negligence of Southwest Mills. In urging this construction of the indemnity provisions, Southwest Mills relied upon our majority opinion in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.,* 29 Cal.App.3d 413 [105 Cal.Rptr. 725]. In *MacDonald,* we classified indemnification provisions into the following three categories:

(1) Those provisions "which [provide] 'expressly and unequivocally' that the indemnitor is to indemnify the indemnitee for, among other things, the negligence of the indemnitee. ■ Under this type of provision, the indemnitee is indemnified whether his liability has arisen as the result of his negligence alone [citation], or whether his liability has arisen as the result of his co-negligence with the indemnitor [citation]."[2] (*Id.,* at p. 419.)

---

[2]Civil Code section 2782 (added by Stats. 1967, ch. 1327, § 1, p. 3158)—whose provisions are prospective only (*Whitmire* v. *H. K. Ferguson Co.,* 261 Cal.App.2d 594,

(2) ■ Those provisions "which [provide] that the indemnitor is to indemnify the indemnitee for the indemnitee's liability 'howsoever same may be caused' [citation] or 'regardless of responsibility for negligence' [citation], or 'arising from the use of the premises, facilities or services of [the indemnitee]' [citation], or 'which might arise in connection with the agreed work' [citation], or ' "caused by or happening in connection with the equipment or the condition, maintenance, possession, operation or use thereof" ' [citation], or 'from any and all claims for damages to any person or property by reason of the use of said leased property' [citation]. Under this type of indemnity provision, the indemnitee is indemnified from his own acts of passive negligence that solely or contributorily cause his liability, but is not indemnified for his own acts of active negligence that solely or contributorily cause his liability."[3] (*Id.*)

(3) ■ Those provisions "which [provide] that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities caused by the indemnitor, but which [do] not provide that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities that were caused by other than the indemnitor. Under this type of provision, any negligence on the part of the indemnitee, either active or passive, will bar indemnification against the indemnitor irrespective of whether the indemnitor may also have been a cause of the indemnitee's liability." (*Id.*, at p. 420.)

In support of its summary judgment motion, Southwest Mills argued that the immediate indemnification provisions came within the third *MacDonald* classification. Accordingly, Southwest Mills contended that

---

602-603 [68 Cal.Rptr. 78]) and which was not in effect at the time the contracts in *MacDonald* and the case at bar were entered into—has modified the general rule with respect to provisions in construction contracts which provide for indemnification for damages which result from the indemnitee's "sole negligence or willful misconduct." Section 2782 specifies that such provisions "are against public policy and are void and unenforceable."

[3]"Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.] Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. [Citations.] 'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed upon him by law.' [Citation.]" (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.*, 13 Cal.3d 622, 629 [119 Cal.Rptr. 449, 532 P.2d 97].)

these provisions obligate Southwest Mills to indemnify Western only for Western's liabilities which are caused by Southwest Mills. Furthermore, any negligence, whether active or passive, on the part of Western (which is not attributable to Southwest Mills), would bar Western's right to indemnification from Southwest Mills. Noting that Southwest Mills was an independent contractor rather than employee, Southwest Mills continued its argument by maintaining that Western could not be vicariously liable for the negligence of Southwest Mills on a respondeat superior basis. Thus, the argument went, if Western was liable for negligence in the main action, that liability was predicated upon Western's own active or passive negligence. Consequently, because Western was not entitled to indemnification if it was liable on any ground other than vicarious liability for the negligence of Southwest Mills, and because Western could not be vicariously liable for any negligence on the part of Southwest Mills, the argument concluded by surmising that it was legally impossible for Western to be both liable for negligence and entitled to indemnification from Southwest Mills.

In opposing the motion for summary judgment, Western emphasized the "intent" of the parties when they agreed upon the indemnity provisions. The thrust of Western's argument was directed toward alleged ambiguities in those provisions, and the consequent failure of Southwest Mills to establish that those provisions came within the third *MacDonald* classification set forth above.

■ We agree with the lower court's determination that, for the purposes of this dispute, there is no triable issue of fact as to the interpretation of the indemnification provisions. In so holding, we reaffirm our analyses of the tripartite classification as set forth in *MacDonald.*

The original indemnification provision, if considered alone, would clearly fall within the first *MacDonald* classification. However, the added provision comes within the third *MacDonald* classification. It is well established that when an instrument contains inconsistent provisions, added written language (here, typewritten) controls over original printed (form) language. (Code Civ. Proc., § 1862.) Moreover, the evidence presented below by appellant is inconclusive and fails to support its contention that the provisions as amended by the parties do not fall within the third *MacDonald* classification. Accordingly, the lower court

correctly determined that, as a matter of law, the indemnification provisions came within the third *MacDonald* classification.

■ Nevertheless, the judgment must be reversed because the evidence presented below failed to establish that Southwest Mills was entitled to summary judgment in its favor.

The motion for summary judgment was grounded upon the supposition that Western could not be vicariously liable for negligence on the part of Southwest Mills because Southwest Mills was an independent contractor. Because Southwest Mills was not an employee of Western, the doctrine of respondeat superior was inapplicable. However, there are a number of exceptions to the general rule that one who employs an independent contractor is not liable for that contractor's negligence.[4] Particularly significant to the immediate case is the exception which recognizes that the employer is liable when the contractor is employed to do "work in which there is a high degree of risk in relation to the particular surroundings, . . ." (Prosser on Torts (4th ed.) p. 473; see also Rest.2d Torts, § 416.) In *Woolen* v. *Aerojet General Corp.,* 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708], the Supreme Court held that an employer's liability under this exception can extend to employees of the independent contractor. While the record in the case at bar does not establish that this exception is definitely applicable in the immediate case, the facts suggest that it could be applicable. Such an inference is "reasonably deducible" (Code Civ. Proc., § 437c) from the fact that the decedent was fatally injured on the dam jobsite when a crane dropped reinforced iron mat upon him.[5]

---

[4]The theories on which liability for the negligence of an independent contractor may be based and the particular situations to which the not-so-general rule applies were extensively reviewed and analyzed by the Supreme Court in *Maloney* v. *Rath,* 69 Cal.2d 442, 446-448 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1], and *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 250, 254 [66 Cal.Rptr. 20, 437 P.2d 508]. In brief, it appears that California law is generally in accord with the Restatement Second of Torts, which sets forth (§§ 416 through 429) the many, partly overlapping, recognized exceptions to the rule of nonliability.

[5]On this appeal, Southwest Mills contends that *Anderson* v. *Chancellor Western Oil Dev. Corp.,* 53 Cal.App.3d 235 [125 Cal.Rptr. 640], prevents Western from being vicariously liable to a Southwest Mills employee under the "peculiar risk" exception. However, *Anderson* is inapplicable to the immediate case because the *Anderson* court expressly found that there was no inherently dangerous or peculiar risk under the factual situation which was there presented. (*Id.,* at p. 243.) In contrast, the evidence in the instant case suggests that such a risk may have been present. (See also *Van Arsdale* v. *Hollinger,* 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508].)

In addition, we note that the record below is completely barren of any facts as to who the negligent parties were in the immediate case. It is therefore possible that the only negligent party was Southwest Mills, and that Western was negligent only vicariously, through the application of one of the exceptions to the general rule of nonliability for the employer of an independent contractor. Such a possibility was reasonably inferable from the record below. In such a situation, the indemnification provisions would enable Western to compel Southwest Mills to indemnify it for the liabilities which it incurs. Consequently, Western's right to indemnification hinges upon material factual issues which were not disposed of below.

The judgment is reversed.

Kaus, P. J., and Ashby, J., concurred.