Filed 5/31/23  Rose II v. FGH CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROSE II LLC et al., | 2d Civil No. B321538 |
| | (Super. Ct. No. 56-2022- |
| Plaintiffs and Appellants, | 00563081-CU-BC-VTA) |
| | (Ventura County) |
| v. | |
| | |
| FGH LLC, | |
| | |
| Defendant and Respondent. | |

Plaintiffs Rose II LLC; Oxnard Place LLC; and Rose TIC, LLC (Plaintiffs) own property in a shopping center (the center) subject to covenants, conditions, and restrictions (CC&R's). Plaintiffs seek to enjoin a neighboring owner, FGH LLC, from opening a cannabis dispensary. They contend cannabis sales violate federal law and thus violate the CC&R's prohibition against use of the premises for "violation of any law."

Because the terms of the CC&R's do not incorporate subsequent legislation regarding cannabis use and both California and federal law prohibited cannabis sales when the CC&R's were adopted in 1996, the CC&R's continue to prohibit

such activity.  We reverse the order denying Plaintiffs' motion for a preliminary injunction because there is a reasonable probability that Plaintiffs will prevail on the merits and direct the trial court to issue the preliminary injunction.

FACTUAL AND PROCEDURAL HISTORY

The center is subject to CC&R's recorded in August 1996. They provide: "No portion of the Shopping Center shall be used for . . . any violation of any law, ordinance, rule or regulation of any governmental authority with jurisdiction over any portion of the Shopping Center."

In 2019, FGH purchased property in the center for the purpose of operating a cannabis dispensary.  FGH applied to the City of Oxnard for a commercial cannabis business permit. Following an extensive application process, the planning commission approved the special use permit.  After the city council denied Plaintiffs' appeal, Plaintiffs sued FGH for breach of the CC&R's and declaratory and injunctive relief.

Plaintiffs sought a preliminary injunction to enjoin FGH from operating a cannabis facility at the center during the pendency of the lawsuit.  The trial court denied the injunction, concluding Plaintiffs did not demonstrate a reasonable probability they would prevail on the merits.  The court did not balance the relative harm to the parties if it enjoined FGH from operating a cannabis dispensary during the pendency of this litigation.

DISCUSSION

*Preliminary injunction*

A preliminary injunction preserves the status quo pending a determination on the merits of the action.  (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 283.)  The status

2

quo " ' "has been defined to mean 'the last actual peaceable, uncontested status which preceded the pending controversy.' " [Citation.]' " (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1408.) "In determining the propriety of preliminary relief, neither the trial court nor an appellate court may undertake a final adjudication of the lawsuit." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.)

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction." (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.) Issuance of a preliminary injunction requires a showing of "a reasonable probability that plaintiff will be successful in the assertion of his rights." (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.)

A ruling granting or denying a preliminary injunction is generally reviewed for abuse of discretion. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.) We reverse the denial of a preliminary injunction only if "the trial court abused its discretion in ruling on *both* factors." (*Id*. at pp. 286-287.) However, "issues of fact are subject to review under the substantial evidence standard; issues of pure law are subject to independent review." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136-1137.)

*Cannabis statutes*

Medicinal cannabis was decriminalized in California by Proposition 215 in November 1996. Nonmedical use of cannabis was authorized by the Control, Regulate and Tax Adult Use of Marijuana Act (AUMA), enacted by Proposition 64 in November

3

2016. The AUMA was renamed the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA; Bus. & Prof. Code, § 26000 et seq.) and amended to authorize nonmedical retail sales effective June 27, 2017.

While MAUCRSA permits sales of cannabis for medicinal and recreational purposes subject to licensure and other requirements (Bus. & Prof. Code, § 26000, subd. (b)), federal law does not. The Controlled Substances Act (CSA; 21 U.S.C. § 801 et seq.) classifies marijuana as a controlled substance, provides that its distribution is unlawful, and provides criminal penalties for violations. (21 U.S.C. §§ 841(a)(1) & (b), 812(c), Schedule I (c)(10).)

Plaintiffs contend they demonstrated a reasonable probability of success on the merits because a cannabis dispensary would violate the prohibition in the CC&R's against use of the premises for "any violation of any law." We agree.

*Jurisdiction*

The CC&R's prohibit "any violation of any law . . . of any governmental authority with jurisdiction over any portion of the Shopping Center." Plaintiffs assert the federal government has jurisdiction over the shopping center because the CSA applies even in states, like California, that permit cannabis activities. (*Gonzales v. Raich* (2005) 545 U.S. 1, 9, 29-33; *City of San Jose v. MediMarts, Inc.* (2016) 1 Cal.App.5th 842, 848.)

Plaintiffs are correct. The federal government has jurisdiction over federal crimes " 'everywhere within the United States.' " (*United States v. McCalla* (9th Cir. 2008) 545 F.3d 750, 756.) The CSA applies even though "[t]he United States Department of Justice . . . 'has declined to enforce [21 U.S.C.] § 841 when a person or company buys or sells marijuana in

4

accordance with state law.' " (*Sandusky v. Goetz* (10th Cir. 2019) 944 F.3d 1240, 1242.)  It did not lose jurisdiction based on Congressional appropriations bills that prohibit the Department of Justice from expending funds to prosecute federal medical marijuana offenses for conduct that complies with state law. (*United States v. McIntosh* (9th Cir. 2016) 833 F.3d 1163, 1169-1170; *City of San Jose v. MediMarts, Inc.*, *supra*, 1 Cal.App.5th at p. 848, fn. 1.)  The appropriation bills do "not provide immunity from prosecution for federal marijuana offenses. . . . Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime." (*McIntosh*, at p. 1179, fn. 5.)

We decline FGH's invitation to apply an administrative definition of a superficially similar phrase.  Building standards define "Authority Having Jurisdiction" as "[a]n organization, office, or individual responsible for enforcing the requirements of a code or standard, or for approving equipment, materials, an installation, or a procedure." (E.g., Cal. Code Regs., tit. 24, part 3, ch. 1, art. 100 (Electrical Code 2022).)  But the reference in the CC&R's to "*any* law . . . of *any* governmental authority with jurisdiction over *any* portion of the Shopping Center" (italics added) is clearly more expansive and includes the federal CSA, whether it is currently enforced or not.  Therefore, we conclude the federal government is a governmental authority with jurisdiction over the center.

### *Violation of law*

Because a recorded declaration of CC&R's is treated as a contract (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 240), we interpret

it pursuant to contract principles. (*Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 635.) Where interpretation of CC&R's is not based " 'on the credibility of extrinsic evidence, we independently interpret the meaning of the written instrument.' " (*Ibid.*) Here, the plain language of the CC&R's prohibits uses that violate federal law.

FGH contends cannabis sales are lawful based on Civil Code section 1550.5, subdivision (b), which provides:

"Notwithstanding any law, including, but not limited to, [Civil Code] Sections 1550, 1667, and 1668 and *federal law*, commercial activity relating to medicinal cannabis or adult-use cannabis conducted in compliance with California law and any applicable local standards, requirements, and regulations shall be deemed to be all of the following:

"(1) A lawful object of a contract.

"(2) Not contrary to, an express provision of law, any policy of express law, or good morals.

"(3) Not against public policy." (Italics added.)

But Civil Code section 1550.5, which was enacted in 2017, does not apply to the CC&R's, which were recorded in 1996. "No part of [the Civil Code] is retroactive, unless expressly so declared." (Civ. Code, § 3.) "[A] statute is presumed to be prospective only in operation and will not be retroactively applied unless such intention clearly appears from the language of the statute itself. [Citations.] This is true even though the statute were to be held to be remedial in nature." (*Whitmire v. H. K. Ferguson Co.* (1968) 261 Cal.App.2d 594, 602.)

The legislative history of Civil Code section 1550.5 states that it "provides individuals working within [the cannabis] industry in California and their attorneys with the security

6

needed to challenge violations of *existing contracts* in court." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1159 (2017-2018 Reg. Sess.) as amended March 28, 2017, pp. 6-7, italics added.) But this language is not contained in "the language of the statute itself" (*Whitmire v. H. K. Ferguson Co.*, *supra*, 261 Cal.App.2d at p. 602) and does not alter the interpretation of the CC&R's.

"A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) Covenants that run with the land "bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them." (Civ. Code, § 1460.)

"[L]aws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." (*Swenson v. File* (1970) 3 Cal.3d 389, 393.) *Swenson* recognized "the general rule which incorporates into contracts existing, but not subsequent, law. The parties are presumed to have had existing law in mind when they executed their agreement [citation]; to hold that subsequent changes in the law which impose greater burdens or responsibilities upon the parties become part of that agreement would result in modifying it without their consent, and would promote uncertainty in commercial transactions." (*Id.* at p. 394.)

Here, the terms of the CC&R's do not incorporate subsequent legislation regarding commercial cannabis sales. When the CC&R's were adopted in 1996, both California and federal law prohibited cannabis sales. The CC&R's continue to

7

prohibit them.  Thus, Plaintiffs are likely to prevail on the merits.[1]

*Balancing of factors*

Whether a preliminary injunction is appropriate requires the trial court to balance the likelihood of success on the merits with the relative interim harm to the parties if it grants the injunction.  (*Butt v. State of California, supra*, 4 Cal.4th at pp. 677-678.)  The trial court here did not balance the harms against the likelihood of success because it found Plaintiffs were not likely to succeed on the merits.  We conclude to the contrary because the CC&R's prohibit a cannabis dispensary as a matter of law.

"[T]he greater the plaintiff's showing on one [factor], the less must be shown on the other to support an injunction."  (*Butt v. State of California, supra*, 4 Cal.4th at p. 678.)  "[I]f the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor."  (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 447.)

Plaintiffs contend they would be harmed by operation of a cannabis dispensary including increased traffic, crime, odors, and

---

1 Accordingly, we need not resolve Plaintiffs' alternative argument that the CC&R's prohibit cannabis sales as " 'adult' uses."  And because we conclude Plaintiffs are likely to prevail based on statutory analysis and contract interpretation, we decline to reach the constitutional issue of whether Civil Code section 1550.5, subdivision (b), violates the supremacy clause. (*Facebook, Inc. v. Superior Court* (2018) 4 Cal.5th 1245, 1275, fn. 31.)

loitering, tenant hesitancy, inability to obtain financing, increased insurance costs, and loss of business. The trial court found these harms were "unsubstantiate[d] predictions." But this conclusion was not made in the context of balancing the relative harms. Instead, it supported the conclusion that Plaintiffs were not likely to prevail *on the merits* of a claim not asserted on appeal—that a cannabis dispensary would constitute a nuisance.

FGH contends a preliminary injunction would harm them by depriving them of potential profits, and that failing to operate would cause their permit to expire.

Because the CC&R's prohibit a cannabis dispensary at the center as a matter of law, we conclude FGH has no lawful right to operate it during the pendency of the lawsuit. Although the trial court did not weigh the harms in denying the preliminary injunction, it would have been an abuse of discretion to deny the injunction on this basis because "the likelihood of appellants' prevailing at trial is great." (*Heyenga v. City of San Diego* (1979) 94 Cal.App.3d 756, 760; *Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1157, 1160.) Plaintiffs have made " 'a sufficiently strong showing of likelihood of success on the merits' " to warrant a preliminary injunction, even without a showing " 'that the balance of harms tips in [their] favor.' " (*14859 Moorpark Homeowner's Assn. v. VRT Corp.*, *supra*, 63 Cal.App.4th at p. 1407, italics omitted.)

Accordingly, we direct the trial court to issue a preliminary injunction.

### *Bond*

Upon issuance of a preliminary injunction, the trial court must order the applicant to post a bond. (Code Civ. Proc., § 529.) We remand to the trial court to exercise its discretion to

9

determine the amount of the bond.  (*Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1061-1062.)

DISPOSITION

The order denying the preliminary injunction is reversed. The trial court is directed to issue a preliminary injunction prohibiting FGH from operating a cannabis facility at the center during the pendency of this action.  We remand for the trial court to determine the amount of bond.  Each side shall bear their own costs in this appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Jeffer, Mangels, Butler & Mitchell, Matthew D. Hinks and Seena M. Samimi for Plaintiffs and Appellants.

Myers, Widders, Gibson, Jones & Feingold and Erik B. Feingold for Defendant and Respondent.